IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2023

## STATE OF TENNESSEE v. MICHAEL ANTHONY THARPE

**Appeal from the Circuit Court for Henry County**
**No. 16399, 16568    Donald E. Parish, Judge**

_____

## No. W2022-01219-CCA-R3-CD

_____

The Appellant, Michael Anthony Tharpe, was convicted at a bench trial of burglary of a vehicle, retaliation for past action, theft of property, assault of an officer, evading arrest, and coercion of a witness. In this consolidated appeal, he challenges: (1) the legal sufficiency of the evidence supporting four of his convictions; and (2) the trial court's imposition of partial consecutive sentences. Upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Steven L. West, Huntingdon, Tennessee (on appeal) and Kaylee C. Houston, Paris, Tennessee (at trial) for the Appellant, Michael Anthony Tharpe.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Neil Thompson, District Attorney General; and Rebecca Griffey, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On August 27, 2020, the Appellant stole items, including a cell phone, from Jessica Phillips' car while it was parked in her driveway. He was arrested the following week with the cell phone in his possession. While incarcerated at the Henry County jail, he mailed Phillips a letter. He claimed to be Phillips' former co-worker with whom she had a sexual affair and threatened to release a video if she testified against him. At the Appellant's preliminary hearing on October 27, 2020, Lieutenant Tony Elkins testified for the State.

At the end of the hearing, the Appellant shouted across the courtroom and threatened to harm him. Based on these incidents, a Henry County grand jury indicted the Appellant for burglary of a vehicle and retaliation for past action in Docket No. 16399. The grand jury, however, returned a no true bill for coercion of a witness stemming from the letter Phillips received.

The Appellant was later released on bail. On February 19, 2021, the Appellant walked onto Martin Moreno's porch, picked up a bike, and carried it down the porch stairs. Moreno's wife confronted him through a Ring security system, and he left the bike in Moreno's yard. On March 18, 2021, Officer Edward Fitzgerald attempted to arrest the Appellant at the courthouse on an outstanding warrant. The Appellant pushed Officer Fitzgerald and ran out of the building. During the altercation, Officer Fitzgerald injured his knee. Based on these incidents, a Henry County grand jury indicted the Appellant for aggravated burglary, theft of property, assault of an officer, escape, and evading arrest in Docket No. 16568. In the same indictment, the grand jury indicted the Appellant for coercion of a witness based on the letter Phillips received, for which it had previously returned a no true bill.

After the Appellant waived his right to a jury trial, the two cases were tried simultaneously before the trial court on August 4, 2021. The court acquitted the Appellant of aggravated burglary and escape, but convicted him as charged for the remaining offenses. The proof relevant to the issues raised in this appeal is summarized below.

**Burglary of a Vehicle**. Jessica Phillips testified that she called law enforcement on August 27, 2020, after discovering that someone had been in her car. The front passenger door was not fully closed, and all of her belongings "had been thrown around." There were a number of items missing, including her son's cell phone, a book of CDs, a lug key, laser parts, and deodorant. She had four security cameras at her house that captured the incident. At some point, the police showed her a cell phone, which she identified as belonging to her son. She again identified the cell phone as her son's at trial. She knew it was his because "[t]he crack at the bottom [was] significant."

Lieutenant Elkins testified that he responded to Phillips' house to investigate the burglary of her car. He reviewed the security footage and identified the Appellant, whom he had known for "[s]everal years," as the man shown entering Phillips' car. The man arrived on a bike, and he had just seen the Appellant on a blue mountain bike "a day or two" before the incident. He saw the side of the man's face and knew it was the Appellant. When he arrested the Appellant the following week, the Appellant had a bike similar to the one seen on the security footage, and a duffel bag containing several phones. On cross-examination, he acknowledged that the security footage was black and white, but maintained that the man's bike appeared blue. When Lt. Elkins was later recalled, he

testified that the bike in the footage was the same bike he saw the Appellant riding a day or two before the incident, and the same bike the Appellant had when Lt. Elkins arrested him.

The security footage was played and entered into evidence. The footage shows a man arriving at Phillips' house on a bike and searching through her car.

The Appellant testified that he was in Huntingdon when the burglary of Phillips' car occurred. He spent the majority of the month there because his grandmother and two aunts passed away. On cross-examination, he claimed that Lt. Elkins was lying about seeing him a day or two before the incident.

**Coercion of a Witness**. Phillips testified that prior to the preliminary hearing, she received a letter in the mail. The letter was from someone claiming to be a friend of the Appellant and to have worked with Phillips at PML, her previous employer. The person said that they and Phillips had "slept together," and that the video of the sexual interaction would be released if she "[went] through with it." She panicked and called the police. Nothing in the letter, other than her having previously worked at PML, was true.

The letter, postmarked October 19, 2020, was entered into evidence. The letter said that the writer's name was T.H., and that they worked with Phillips at PML "at one time." T.H. and Phillips had sex, and T.H. "had a friend record [them]." That friend "is charged with a car burglary in which the car belongs to [Phillips]" and "let it be known that he will expose [them] having sex[.]" The letter then said, "I'm not trying to scare you into coercion, but please don't be selfish in making your decision. I have a wife and kids and I don't need this shit." Though the listed return address was 415 Lake Highway in Paris, Tennessee, the envelope was stamped "mailed from the Henry County Correctional Facility."

Corey Teague testified that around October 19, 2020, he shared a cell with the Appellant at the Henry County jail. He witnessed the Appellant "write a letter to a young lady . . . about a videotape of her having relations with Tyler Herndez" to "misdirect her." For the return address, the Appellant wrote T.H. and a Lake Highway address. He confirmed that this letter was the letter entered into evidence. The Appellant told Teague "[h]e was going to make bond, and he was going to go after her." On cross-examination, Teague acknowledged that he wrote a letter to the State requesting a "ninety-day split" sentence for his pending violation of probation and assault charges in exchange for his testimony against the Appellant. He also acknowledged that he was on probation for sale of methamphetamine and had a history of theft convictions.

- 3 -

Lieutenant Daniel Powell, the jail administrator for the Henry County Sheriff's Office, testified that the Appellant and Teague were both housed in cell 138 at the Henry County jail on October 19, 2020. He said that inmates are permitted to write letters, and the letters are stamped to indicate they came from the Henry County jail. He confirmed that the stamp on the envelope entered into evidence was the stamp used at the jail.

The Appellant testified that he had no reason to write Phillips because it was not he in the security footage. On cross-examination, he clarified that he believed Lt. Elkins was accusing him of burglarizing Phillips' car, not Phillips.

**Retaliation for Past Action**. Lt. Elkins testified that he was a witness at the Appellant's preliminary hearing on October 27, 2020. When he finished testifying, he could see the Appellant "mouthing and yelling." He saw the Appellant pointing at him and heard the Appellant say "that he was going to sue [him]."

The recording of the exchange at the Appellant's preliminary hearing was played and entered into evidence. As the trial judge was speaking, the Appellant could be heard in the background. The Appellant's only intelligible statement was "I'm gonna sue your ass too." The trial judge then said, "Right now, that's enough for you to be charged with threatening a police officer, do you understand that? So, Lt. Elkins, if you wish to have that done, Investigator Collins [] can certainly do that."

Three witnesses testified that they heard the Appellant threaten bodily harm to Lt. Elkins. Officer Fitzgerald testified that the Appellant "threatened bodily harm to [Lt. Elkins] and said that he was going to sue him and that he was a liar." Officer Lonn Howarter, the courtroom bailiff, testified that he heard the Appellant tell Lt. Elkins "he was going to kick [Lt. Elkins'] ass if he . . . came across him." On cross-examination, he said the Appellant may have said "[whoop] his ass." Another bailiff, Officer Thomas Bell, testified that he heard the Appellant tell Lt. Elkins that "if he ever [saw] [Lt. Elkins] out, he would kick his butt."

The Appellant testified that "[he] did say [he] was going to sue [Lt. Elkins]," but he did not threaten any bodily harm.

**Theft of Property**. Martin Moreno testified that on February 9, 2021, the Appellant tried to take a bike from his front porch His Ring security system notified him that someone was at his door. He saw live video of the Appellant picking up the bike and carrying it down his porch steps. His wife spoke through the security system and confronted the Appellant. The Appellant dropped the bike and left. Moreno also had footage of the Appellant "scoping out the house earlier that day and the day prior[.]" Moreno said that the bike's value was about five hundred dollars.

- 4 -

The video was played and entered into evidence. It shows that a man walked onto the porch and grabbed a bike. As he carried it down the porch stairs, a woman's voice yelled, "Hey, put that down." The man dropped the bike in the yard and left. As he was walking off, he said, "Somebody said that was my bike." The woman responded, "Well, that ain't yours."

Officer Zachariah Carper testified that he responded to the incident at Moreno's house. When he initially reviewed the video, he was unable to identify the man. A few days later, however, he discovered the Appellant riding a bike and wearing the same clothing as the man in the video. He spoke with the Appellant about the incident and showed him pictures from the Ring video. The Appellant "advised that those pictures did actually look like [him]" and said "he was on the property because somebody told him it was his bicycle."

The Appellant testified that he went on the porch and tried to take a bike because he thought it was his. His bike was stolen, and someone told him that his bike was on that porch. When the woman said it was hers, he put it down.

At the conclusion of the bench trial, the trial court convicted the Appellant of burglary of a vehicle, retaliation for past action, theft of property, assault of an officer, evading arrest, and coercion of a witness. For the burglary of a vehicle, the trial court noted that "the most significant bit of evidence" was that the Appellant was found in possession of property taken during the burglary of Phillips' car. For the retaliation for past action, the court found that the Appellant indicated he would do physical harm to Lt. Elkins. For the coercion of a witness, the court accredited the testimony of Teague and noted that the Appellant had something to gain from Phillips being intimidated into not testifying.

**Sentencing Hearing**. On September 10, 2021, the trial court conducted a sentencing hearing. The State introduced the presentence report and certified copies of the Appellant's prior convictions, noting that the Appellant had seventy-three prior convictions, including sixteen felonies. The State also asserted that the Appellant committed each of the offenses while on supervised probation. The Appellant testified and denied sending a letter to Phillips or threatening Lt. Elkins. He claimed that Teague was lying, and that there was no investigation about the phone that he allegedly stole from Phillips.

Following the above proof, the court imposed an effective sentence of eighteen years' imprisonment. In Docket No. 16399, the court sentenced the Appellant as a career offender to concurrent sentences of six years for burglary of a vehicle and six years for retaliation for past action. In Docket No. 16568, the court sentenced the Appellant as a

career offender to concurrent sentences of eleven months and twenty-nine days for theft of property, six months for assault of an officer, eleven months and twenty-nine days for evading arrest, and twelve years for coercion of a witness. The effective six year sentence in Docket No. 16399 and the effective twelve year sentence in Docket No. 16568, however, were ordered to be served consecutively. The court explained its reasons for the partial consecutive sentences, stating:

> With respect to the question of consecutive sentencing, the [c]ourt finds that the [Appellant] is an offender [whose] record of criminal activity is extensive. With respect to the question of mandatory consecutive sentencing, the [c]ourt finds that the [Appellant] committed a felony while on bail for a felony for which the [Appellant] was, ultimately, convicted, and that's within these two docket numbers, [Docket No.] 16399 and Docket No. 16568.

The Appellant filed an unsuccessful motion for new trial. The case is now before this court for review.

## ANALYSIS

**I. Sufficiency of the Evidence**. The Appellant argues that the evidence is insufficient to support his convictions for burglary of a vehicle, coercion of a witness, retaliation for past action, and theft of property. The State responds, and we agree, that the evidence is sufficient to support the convictions.

When evaluating the sufficiency of the evidence, this court must determine "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because a guilty verdict removes the presumption of innocence and imposes a presumption of guilt, the Appellant bears the burden of showing why the evidence is insufficient to support the verdict. Id. (citing State v. Rice, 184 S.W.3d 646, 661 (Tenn. 2006)). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

"In a bench trial, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict." State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (citing State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978)). The judge must evaluate the credibility of witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing

Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the [judge]." State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

**A. Burglary of a Vehicle**. The Appellant first argues that the State failed to prove his identity as the perpetrator of the burglary of Phillips' car. In support of this argument, he states only that Lt. Elkins' identification of the Appellant "was not really a positive identification" and "[he] relied on having seen the [Appellant] two days prior."

"The identity of the perpetrator is an essential element of any crime." Rice, 184 S.W.3d at 662 (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. State v. Thomas, 158 S.W.3d 361, 387 (Tenn. 2005). The identification of the defendant as the perpetrator is a question for the trier of fact after considering all the relevant proof. Id. at 388.

The evidence presented at trial, viewed in the light most favorable to the State, shows that the Appellant was the perpetrator of the burglary of Phillips' car. Lt. Elkins was familiar with the Appellant and identified him as the man entering Phillips' car on the security footage. The following week, the Appellant was found in possession of a cell phone, which Phillips identified as the one stolen from her car. The Appellant was also in possession of a bike that Lt. Elkins testified was the same as the bike in the security footage. Accordingly, a rational trier of fact could have found that the Appellant was the perpetrator of the burglary of Phillips' car, and the Appellant is not entitled to relief.

**B. Coercion of a Witness**. The Appellant also challenges the sufficiency of the evidence supporting his coercion of a witness conviction, arguing that the State failed to prove that Phillips was "actually being threatened" or was "in fear." He also challenges the credibility of Teague, the State's primary witness.

The trial court convicted the Appellant of coercion of a witness based on the letter he mailed to Phillips. As convicted in this case, "[a] person commits an offense who, by means of coercion, influences or attempts to influence a witness . . . in an official proceeding with intent to influence the witness to . . . withhold any truthful testimony [or] truthful information[.]" Tenn. Code Ann. § 39-16-507(a)(2) (2019).

The evidence presented at trial, viewed in the light most favorable to the State, shows that the Appellant, by means of coercion, attempted to influence Phillips to withhold truthful testimony. Phillips received a letter suggesting that the Appellant would release a video of Phillips' sexual affair if Phillips testified against the Appellant. Though the letter

claimed to be from a person named T.H., Teague saw the Appellant write the letter when they shared a cell at the Henry County jail. Teague's testimony is corroborated by the stamp on the envelope indicating that the letter was mailed from the Henry County jail. The Appellant now attacks Teague's credibility. But the credibility of witnesses is a question for the trier of fact, and the trial court specifically accredited Teague's testimony. See Campbell, 245 S.W.3d at 335. As highlighted by the trial court, it was the Appellant who had something to gain by Phillips not testifying. Based on this evidence, a rational trier of fact could have found that the Appellant coerced a witness. Though the Appellant questions whether Phillips was actually in fear, the statute contains no such element. Accordingly, the Appellant is not entitled to relief.

C. **Retaliation for Past Action**. The Appellant challenges the sufficiency of the evidence supporting his retaliation for past action conviction. He argues that the State failed to prove that a threat was made, pointing to the "contradictory statements as to what the [Appellant] actually said" and the fact that the Appellant "was in custody and incapable of causing any harm."

The trial court convicted the Appellant of retaliation for past action based on his statement to Lt. Elkins at the preliminary hearing. As charged in this case, the State was required to prove that the Appellant "[threatened] to harm a witness at an official proceeding . . . by any unlawful act in retaliation for anything the witness . . . did in an official capacity as witness[.]" Tenn. Code Ann. § 39-16-510(a)(1) (2014).

The evidence presented at trial, viewed in the light most favorable to the State, shows that the Appellant threatened Lt. Elkins in retaliation for Lt. Elkins' preliminary hearing testimony. Though the Appellant emphasizes variations in the exact statement that each witness heard, three witnesses agreed that the Appellant threatened bodily harm to Lt. Elkins after Lt. Elkins testified at the Appellant's preliminary hearing. The Appellant's threats are unintelligible, but the trial judge, in response to the Appellant's statements, clearly stated "[r]ight now, that's enough for you to be charged with threatening a police officer." A rational trier of fact, therefore, could have found that the Appellant committed retaliation for past action.

Though the Appellant contends that he was "in custody and incapable of causing any harm," he has cited no authority that suggests capability of causing harm is an essential element of retaliation for past action. The statute includes no such element, and this court has previously found sufficient evidence of retaliation for past action based on threats made by a defendant in custody. See State v. Calvera, No. E2018-00982-CCA-R3-CD, 2019 WL 1858297, at *2-3 (Tenn. Crim. App. Apr. 25, 2019), no perm. app. filed (upholding retaliation for past action conviction when inmate threatened to kill correction officer's

family).  Accordingly, the Appellant has not met his burden of showing why the evidence is insufficient to support the conviction.

**D. Theft of Property**.  The Appellant next challenges the sufficiency of the evidence supporting his theft of property conviction.  He argues the State failed to prove that the Appellant obtained the bike.  He contends that the video "shows someone setting a bicycle next to the porch, but it does not show anyone taking said bicycle."  Alternatively, he argues the State failed to prove that the Appellant was the perpetrator of the theft.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."  Tenn. Code Ann. § 39-14-103(a) (2011).  Obtain "includes, but is not limited to, the taking, carrying away or the sale, conveyance or transfer of title to or interest in or possession of property[.]"  Id. § 39-11-106(27)(A).  Traditionally, intent to deprive the owner of possession and the carrying away of property, no matter how slight the distance, constituted a larceny.  Caruso v. State, 326 S.W.2d 434, 435-36 (Tenn. 1958).  Though Tennessee has since consolidated the various theft offenses into Tennessee Code Annotated section 39-14-103(a), this court has continued to hold that the slightest change in the property's location is sufficient to establish that a person obtained the property.  See State v. Sappington, No. W2016-01010-CCA-R3-CD, 2017 WL 2199175, at *2-3 (Tenn. Crim. App. May 18, 2017), perm. app. denied (Tenn. Sept. 22, 2017) (upholding theft conviction when defendant moved trailer a couple of feet before being thwarted by police).

The evidence presented at trial, viewed in the light most favorable to the State, shows that the Appellant obtained Moreno's bike without consent and with intent to deprive Moreno of the bike.  The video of the incident shows a man walking onto Moreno's porch, grabbing his bike, and carrying it down the porch stairs.  Though the man dropped the bike in the yard after Moreno's wife confronted him, the man had already "obtained" the bike by removing it from the porch.  See Sappington, 2017 WL 2199175, at *2-3.

In addition, Officer Carper identified the Appellant as the man in the video seen taking the bike.  A few days after the incident, Officer Carper saw the Appellant wearing the same clothing as the man in the video.  The Appellant did not contest his identity as the perpetrator at trial.  He admitted that he went on the porch and tried to take the bike because he thought it was his.  Based on this evidence, a rational trier of fact could have convicted the Appellant of theft of property and the Appellant is not entitled to relief.

**II. Consecutive Sentencing**.  Lastly, the Appellant argues that the trial court abused its discretion in ordering that his twelve-year sentence for coercion of a witness be served consecutively to his six-year sentence for burglary of a vehicle and retaliation for past action.  He argues that the three convictions are "part of the [same] criminal conduct[.]"

He also, without explaining its relevance, discusses the additional findings required for imposing consecutive sentences based on the dangerous offender classification. The State responds, and we agree, that the court did not abuse its discretion because the Appellant had an extensive record of criminal activity.

The appealing party bears the burden of establishing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sent'g Comm'n Cmts. "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple sentences to be served consecutively if it finds by a preponderance of the evidence that the defendant fits into one of the enumerated categories. Tenn. Code Ann. § 40-35-115(b) (2010). These categories include:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Id.  When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed."  Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); State v. Imfield, 70 S.W.3d 698, 708 (Tenn. 2002).

In this case, the trial court incorrectly believed that consecutive sentences were mandatory.  This belief was based on its finding that the Appellant, while released on bail for a felony in Docket No. 16399, committed a felony in Docket No. 16568.  See Tenn. Code Ann. § 40-20-111(b) (2012).  Though this finding would mandate consecutive sentences, it is not supported by the record in this case.  The only offense that the Appellant committed while released on bail for the felonies in Docket No. 16399 was misdemeanor theft of property.  The court was seemingly referencing the Appellant's commission of coercion of a witness, as it was the only felony conviction in Docket No. 16568.  The Appellant did send Phillips the threatening letter after his arrest for the felony burglary of a vehicle in Docket No. 16399, but he did so while incarcerated—not while released on bail.  The Appellant was therefore not subject to mandatory consecutive sentences.

Nevertheless, the imposition of consecutive sentences was within the court's discretion.  The court found that the Appellant was an offender whose record of criminal activity was extensive.  This finding is supported by the Appellant's seventy-three prior convictions and was alone sufficient to impose consecutive sentences.  See State v. Nelson, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008) (citing State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997)) ("[A]n extensive criminal history, standing alone, is enough to justify the imposition of consecutive sentencing").  The court was therefore permitted to order consecutive sentences, regardless of whether the convictions were "part of the [same] criminal conduct."  And despite the Appellant's references to the dangerous offender classification, the court imposed partial consecutive sentences based on the Appellant's extensive record of criminal activity, not his dangerousness.  Accordingly, the court did not abuse its discretion.

## CONCLUSION

Based on the above reasoning and authority, we affirm the trial court's judgments.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE